UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FEDERAL TRADE COMMISSION and
FLORIDA OFFICE OF ATTORNEY
GENERAL, DEPARTMENT OF LEGAL
AFFAIRS,

      Plaintiffs,

v.                                            CASE NO. 3:10-cv-266-J-34JBT

ALCOHOLISM CURE CORPORATION
doing business as Alcoholism Cure
Foundation, and ROBERT DOUGLAS
KROTZER, individually and as an officer
and/or director of Alcoholism Cure
Corporation,

      Defendants.
_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiffs' Renewed Motion for Entry of Default Judgment Against Defendant Alcoholism Cure Corporation, and Memorandum in Support ("the Motion") (Doc. 161).[2] To date, Defendant Alcoholism Cure Corporation, also doing business as Alcoholism Cure Foundation ("ACF"), has not filed a response to the Motion despite receiving notice of the Motion and being given an adequate opportunity to respond.[3] Therefore, the Court will treat the Motion as unopposed.

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." FED. R. CIV. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02(a). "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

[2] The Motion has been referred to the undersigned "for the sole purpose of resolving the issue of [the corporate] Defendant's liability." (Doc. 163 at 1.)

[3] Defendant Krotzer is the President and sole owner of ACF. (Doc. 40 at 1 n.1.) He
(continued...)

Because the Court has jurisdiction over the claims presented in the Complaint, and the Complaint adequately states a claim for which relief may be granted, it is recommended that the Motion be **GRANTED**.

I.   **Introduction**

Plaintiffs initiated this action against Defendants, ACF and Robert Douglas Krotzer ("Krotzer"), on March 29, 2010. (Doc. 1.) In its Complaint for Permanent Injunction and Other Equitable Relief ("the Complaint"), Plaintiffs allege seven separate counts against ACF.[4] Counts I through V are brought by the Federal Trade Commission ("FTC"), and allege that ACF engaged in deceptive acts or practices and false advertising in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a), 52. (Doc. 1.) Count VI is also brought by the FTC, and alleges that ACF engaged in unfair acts or practices in violation of Sections 45(a) and (n) of the FTC Act, 15 U.S.C. §§ 45(a), (n). (Doc. 1.) Count VII is brought by the State of Florida, and alleges that ACF engaged in deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), FLA. STAT. §§ 501.201 *et. seq.* (Doc. 1.)

Plaintiffs served ACF with process on April 12, 2010. (Doc. 8.) Although ACF was initially represented by counsel in this case, ACF's attorney was allowed to withdraw on July 19, 2010, without ACF ever having responded to the Complaint. (*See*

---

(...continued)
is signed up to receive electronic service of all filings in this case.

[4] All seven counts were brought against both Defendants. (Doc. 1.) The Court has granted summary judgment against Krotzer on the issue of liability as to all seven counts. (Doc. 159.) Accordingly, the Court will limit its discussion to the allegations as they pertain to ACF.

Doc. 18.) ACF has not retained replacement counsel, and as a corporation, it "may appear and be heard only through counsel . . . ." M.D. Fla. R. 2.03(e). In any case, ACF has not filed a response to the Complaint or otherwise defended this action.[5] On September 14, 2010, Plaintiffs moved for default against ACF (Doc. 37), and on September 21, 2010, the Court granted that motion (Doc. 46). Accordingly, the Clerk of Court entered a default against ACF on September 22, 2010. (Doc. 47.) Plaintiffs now move for entry of a default judgment against ACF on all seven Counts (Doc. 161),[6] and the Motion is ripe for resolution.

## II.  Standard

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment. First, when the defendant fails to plead or otherwise defend the lawsuit, the clerk of court is authorized to enter a clerk's default against the defendant. *See* FED. R. CIV. P. 55(a). Second, and in general, after receiving the clerk's default, the court, or in some instances the clerk, may enter a default judgment against the defendant for not appearing. *See* FED. R. CIV. P. 55(b).

The law is well settled that through his or her default, a defendant "admit[s] [a]

---

[5] Krotzer attempted to represent ACF after ACF's attorney withdrew. (*See* Doc. 40 (attempting to oppose Plaintiffs' motion for default against ACF).) However, "[a] corporation may appear and be heard only through counsel admitted to practice in the Court." M.D. Fla. R. 2.03(e); *see also Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985) ("The rule is well established that a corporation is an artificial entity that can act only through agents, cannot appear *pro se*, and must be represented by counsel.").

[6] Plaintiffs previously moved for default judgment against ACF. (Doc. 124.) However, the Court denied that motion without prejudice to refiling after the Court made a final determination on the merits in this case as to Krotzer (Doc. 141), which the Court has done (Doc. 159).

3

plaintiff's well-pleaded allegations of fact . . . ." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also Patray v. Nw. Publ'g., Inc.*, 931 F. Supp. 865, 869 (S.D. Ga. 1996). However, a defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Nishimatsu*, 515 F.2d at 1206; *see also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) (stating that "facts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the judgment"). A sufficient basis must exist in the pleadings for a default judgment to be entered. *See Nishimatsu*, 515 F.2d at 1206. Accordingly, before entering a default judgment the Court must ensure it has jurisdiction over the claims and the complaint adequately states a claim for which relief may be granted. *Id.*; *see also GMAC Commercial Mortgage Corp. v. Maitland Hotel Assocs.*, 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002).

Rule 8 provides the applicable pleading standard, and requires that a complaint include (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for relief. *See* FED. R. CIV. P. 8(a). A complaint meets the requirements of Rule 8, if in light of the nature of the action, the complaint provides factual allegations, which are assumed to be true, sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."). However, a "plaintiff's obligation to

4

provide the grounds for his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555.

## III. Analysis

### A. Subject Matter Jurisdiction

In the Complaint, Plaintiff alleges that this Court has jurisdiction over Counts I through VI in this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. §§ 45 and/or 52. (Doc. 1 at 2.) Plaintiff further alleges that the Court has supplemental jurisdiction over the FDUTPA claim alleged in Count VII pursuant to 28 U.S.C. § 1367. (Doc. 1 at 2.)

In order for the Court to have jurisdiction under 28 U.S.C. § 1331, the claims alleged in the Complaint must arise under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. In Counts I through VI of the Complaint, Plaintiff alleges violations of 15 U.S.C. §§ 45 and/or 52.[7] Those claims arise under federal law, and thus, the Court has jurisdiction, pursuant to 28 U.S.C. § 1331, over Counts I through VI.

Given that the Court has original jurisdiction over Counts I through VI, the Court also has supplemental jurisdiction over the FDUTPA claim alleged in Count VII if that claim is "so related to claims in the action within such original jurisdiction that [it] form[s] part of the same case or controversy under Article III of the United States Constitution."

---

[7] The factual allegations in support of Plaintiffs' Counts I through VI are discussed in detail below. By virtue of its default, ACF is deemed to have admitted all well pled allegations of fact. Further, as discussed below, the Court finds that Plaintiffs have pled Counts I through VI sufficiently to state claims for which relief may be granted.

5

28 U.S.C. § 1367(a). As discussed in detail below, Count VII is based on the same alleged acts and practices by Defendant that support Counts I through VI. Therefore, Count VII forms part of the same case or controversy as Counts I through VI, and the Court has supplemental jurisdiction over Count VII pursuant to 28 U.S.C. § 1367.

### B. Whether Plaintiffs Have Stated a Claim for Which Relief May Be Granted and, thus, Established ACF's Liability on Each of the Seven Counts

#### 1. Count I

Count I, titled "False or Unsubstantiated Efficacy Claims," alleges that ACF engaged in deceptive acts or practices and false advertising, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a), 52. (Doc. 1 at 18-19.)

As an initial matter, Sections 5(a) and 12 of the FTC Act only prohibit behavior that takes place in or affects interstate commerce. 15 U.S.C. §§ 45(a), 52; *see also* 15 U.S.C. § 44 (defining "[c]ommerce" as "commerce among the several States or with foreign nations . . ."). In the Complaint, Plaintiffs allege, "ACF transacts or has transacted business in this District and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, ACF has advertised, marketed, promoted, offered for sale, sold, or distributed the 'Permanent Cure' Program to consumers throughout the United States." (Doc. 1 at 3-4.) Plaintiffs further allege that "[a]t all times relevant to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as 'commerce' is defined in Section 4 of the FTC Act, 15 U.S.C. § 44." (*Id.* at 4.) Plaintiffs allege throughout the Complaint specific

6

statements and representations made by Defendants on ACF's website. (*See, e.g., id.* at 6.) They allege that, "[w]hen consumers continue their efforts to cancel or attempt to cancel the 'Permanent Cure' Program, in numerous instances, Defendants send dunning emails or letters." (*Id.* at 15.) They also allege that, "[w]hen consumers cancel or attempt to cancel the 'Permanent Cure' Program, in numerous instances, Defendants bill consumers' credit card or PayPal account consecutive times without authorization . . . ." (*Id.* at 16.) By these allegations, which apply generally to all Counts of the Complaint,[8] Plaintiffs have sufficiently alleged the requisite effect on interstate commerce.

In addition to establishing the requisite effect on interstate commerce, to establish liability under Sections 5(a) and 12 of the FTC Act for deceptive acts or practices and false advertising, "the FTC must establish that (1) there was a representation[,] (2) the representation was likely to mislead customers acting reasonably under the circumstances, and (3) the representation was material." *FTC v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003) (citations omitted); *see also FTC v. Medlab, Inc.*, 615 F. Supp. 2d 1068, 1075-76 (N.D. Cal. 2009) (setting forth same elements for violations of Section 12 of FTC Act as for Section 5(a)). Regarding the second element,

> the FTC may proceed under a "falsity theory," a "reasonable basis theory," or both. If the FTC proceeds under a falsity theory, it "must demonstrate either that the express or implied message conveyed by the ad is false."

---

[8] Accordingly, the Court will not repeat this analysis in its discussion of Counts II through VII.

If the FTC proceeds under a "reasonable basis" theory, it must demonstrate that the advertiser lacked a reasonable basis—or adequate substantiation—for asserting that the message was true.

*FTC v. Nat'l Urological Group, Inc.*, 645 F. Supp. 2d 1167, 1190 (N.D. Ga. 2008) (citations omitted). As to the third element, "'[e]xpress claims, or deliberately made implied claims, used to induce the purchase of a particular product or service are presumptively material. In addition, other courts have also found claims that 'significantly involve health, safety, or other issues that would concern reasonable customers' to be presumptively material." *Id.* (citations omitted).

In Count I, the FTC alleges: "Defendants have represented . . . that the 'Permanent Cure' Program: a. [c]ures alcoholism for most alcoholics who sign up for the Program; b. [c]ures alcoholism while allowing alcoholics to drink socially; and c. [i]s more effective than other treatments for alcoholism." (Doc. 1 at 18.) The FTC alleges that these representations "were false or were not substantiated at the time the representations were made." (*Id.*) The FTC further alleges that these representations were made "[t]o induce customers to purchase the 'Permanent Cure' Program. (*Id.* at 6.) Accordingly, the FTC has stated a claim for which relief may be granted in Count I, and has established ACF's liability under this Count.

### 2. Count II

Count II, titled "False Establishment Claims," alleges, like Count I, that ACF engaged in deceptive acts or practices and false advertising, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a), 52. (Doc. 1 at 19.)

The FTC alleges: "Defendants have represented . . . that the 'Permanent Cure' Program: a. [i]s scientifically proven to cure alcoholism; and b. [h]as been validated by a $35,000,000 research study." (*Id.*) The FTC alleges that, "[i]n truth and in fact, the 'Permanent Cure' Program: a. [i]s not scientifically proven to cure alcoholism; and b. [h]as not been validated by a $35,000,000 research study." (*Id.*) The FTC further alleges that these representations were made "[t]o induce customers to purchase the 'Permanent Cure' Program. (*Id.* at 6.) Accordingly, the FTC has stated a claim for which relief may be granted in Count II, and has established ACF's liability under this Count.

### 3. Count III

Count III, titled "False Claims About Cost and Cancellation Policy," alleges, like Count I, that ACF engaged in deceptive acts or practices and false advertising, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a), 52. (Doc. 1 at 19-20.)

The FTC alleges: "Defendants have represented . . . that: a. [t]he 'Permanent Cure' Program is virtually free, costing only $350 or, at most, a few hundred dollars more; and b. [c]onsumers can cancel the 'Permanent Cure' Program anytime if not being cured." (*Id.*) The FTC alleges:

> In truth and in fact, in numerous instances: a. . . . Defendants claim that consumers owe from $9,350 to more than $20,000 for the "Permanent Cure" Program; and b. . . . consumers cannot cancel the "Permanent Cure" Program anytime if not being cured because, when they cancel, Defendants attempt to collect additional fees up to the full cost of the Program by, among other things, sending dunning notices, billing consumers without authorization, and filing lawsuits.

9

(*Id.* at 20.) The FTC further alleges that these representations were made "[t]o induce customers to purchase the 'Permanent Cure' Program. (*Id.* at 6.) Accordingly, the FTC has stated a claim for which relief may be granted in Count III, and has established ACF's liability under this Count.

### 4. Count IV

Count IV, titled "False Claims About Professional Qualifications," alleges, like Count I, that ACF engaged in deceptive acts or practices and false advertising, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a), 52. (Doc. 1 at 20-21.)

The FTC alleges: "Defendants have represented . . . that Krotzer and other ACF employees have doctorates or licenses in areas related to the treatment of alcoholism." (*Id.*) The FTC alleges that, "[i]n truth and in fact, . . . neither Krotzer nor any ACF employee holds any doctorate or license in areas related to the treatment of alcoholism." (*Id.* at 21.) The FTC further alleges that these representations were made "[t]o induce customers to purchase the 'Permanent Cure' Program. (*Id.* at 6.) Accordingly, the FTC has stated a claim for which relief may be granted in Count IV, and has established ACF's liability under this Count.

### 5. Count V

Count V, titled "False Privacy Claims," alleges, like Count I, that ACF engaged in deceptive acts or practices and false advertising, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a), 52. (Doc. 1 at 21-22.)

The FTC alleges: "Defendants have represented . . . that they would keep consumers' personal and health information private, confidential, and anonymous." (*Id.* at 21.) The FTC alleges that, "[i]n truth and in fact, in numerous instances, Defendants did not keep consumers' personal and health information private, confidential, and anonymous. In particular, . . . Defendants disclosed the personal and health information they collected from consumers to the Better Business Bureau, credit card companies, PayPal, other consumers, and the public, among others." (*Id.*) The FTC further alleges that these representations were made "[t]o induce customers to purchase the 'Permanent Cure' Program. (*Id.* at 6.) Accordingly, the FTC has stated a claim for which relief may be granted in Count V, and has established ACF's liability under this Count.

### 6. Count VI

Count VI, titled "Unauthorized Billing," alleges that ACF engaged in unfair acts or practices in violation of Sections 45(a) and (n) of the FTC Act, 15 U.S.C. §§ 45(a), (n). (Doc. 1 at 22.)

A three-part test is used to analyze unfair practices under the FTC Act: "'To justify a finding of unfairness the injury must satisfy three tests. It must be substantial; it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and it must be an injury that consumers themselves could not reasonably have avoided.'" *FTC v. Direct Mktg. Concepts, Inc.*, 569 F. Supp. 2d 285, 299 (D. Mass. 2008) (citations omitted).

In Count VI, the FTC alleges that, [i]n numerous instances, . . . in connection with

the advertising, marketing, promotion, offering for sale, sale, or distribution of the 'Permanent Cure' Program, Defendants have caused charges to be submitted for payment to financial institutions without obtaining the express informed consent of consumers." (Doc. 1 at 22.) The FTC alleges that these actions "cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid and that is not outweighed by countervailing benefits to consumers or competition." (*Id.*) The FTC alleges that, "[w]hen consumers cancel or attempt to cancel the 'Permanent Cure' Program, in numerous instances, Defendants bill consumers' credit card or PayPal account consecutive times without authorization, often in amounts far exceeding the monthly subscription fee, until the account will no longer accept charges." (*Id.* at 16.) Given these allegations, the Court finds that the FTC has stated a claim for which relief may be granted in Count VI, and has established ACF's liability under this Count.

### 7. Count VII

Count VII alleges that ACF engaged in deceptive acts or practices in violation of the FDUTPA, FLA. STAT. §§ 501.201 *et. seq.* (Doc. 1.)

The FDUTPA makes clear that conduct which constitutes a "deceptive act or practice," "an unfair act or practice," or "false advertising" under the FTC Act is a violation of the FDUTPA. For instance, the FDUTPA provides:

> 501.202. Purposes; rules of construction
> The provisions of this part shall be construed liberally to promote the following policies:
> (1) To simplify, clarify, and modernize the law governing consumer protection, unfair methods of competition, and unconscionable, deceptive, and unfair trade practices.
> (2) To protect the consuming public and legitimate business enterprises

12

> from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.
> (3) To make state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection.

FLA. STAT. § 501.202. Additionally, the FDUTPA provides that "[v]iolation of this part" may be based upon any of the following:

> . . . .
> (b) The standards of unfairness and deception set forth and interpreted by the [FTC] or the federal courts;
> (c) Any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.

FLA. STAT. § 501.203. Moreover, the FDUTPA provides:

> (1) Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.
> (2) It is the intent of the Legislature that, in construing subsection (1), due consideration and great weight shall be given to the interpretation of the [FTC] and the federal courts relating to s. 5(a)(1) of the [FTC] Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2006.

FLA. STAT. § 501.204.

In Count VII, the State of Florida alleges the same violations previously alleged in Counts I through VI (Doc. 1 at 23-24), and for the reasons discussed above in regard to those counts, the Court finds that the State of Florida has stated a claim for which relief may be granted in Count VII, and has established ACF's liability under this Count.

### C. Demand for Relief

As required by Rule 8, the Complaint contains a prayer for relief. (Doc. 1 at 25-26.)

### D. Consistent Judgments

As discussed in the Court's Order of May 10, 2011, in which it denied without prejudice Plaintiffs' initial motion for default judgment against ACF (Doc. 141), the Supreme Court held in *Frow v. De La Vega* that, under certain circumstances, a district court is prohibited from entering a default judgment against less than all of the defendants in a case prior to a decision on the merits as to the remaining defendants, 82 U.S. (15 Wall.) 552 (1872). "*Frow* has been interpreted to apply only where there is a risk of inconsistent adjudications." *Drill South, Inc. v. Int'l Fidelity Ins. Co.*, 234 F.3d 1232, 1237 n.8 (11th Cir. 2000) (citation omitted). Based on the analysis contained herein, the undersigned is recommending that ACF be found liable under all Counts contained in the Complaint, which is consistent with the Court's prior ruling as to Krotzer's liability (*see* Doc. 159 (granting summary judgment against Krotzer as to liability)).

### IV. Conclusion

As discussed above, the Court has jurisdiction over the claims alleged in Counts I through VII of the Complaint. Moreover, by its default, ACF has admitted Plaintiffs' well-pleaded allegations of fact, *Nishimatsu*, 515 F.2d at 1206, and as discussed above, those allegations state a claim for which relief may be granted in each of Counts I through VII. For these reasons, the undersigned recommends that the Court find ACF liable under each of those counts, which is consistent with the Court's prior ruling regarding Krotzer's liability, and enter default judgment thereon.

Accordingly, it is respectfully **RECOMMENDED** that:

In regard to the Motion (**Doc. 161**), ACF be found liable under each of Counts I through VII of the Complaint.

**DONE AND ENTERED** at Jacksonville, Florida, on December 5, 2011.

JOEL B. TOOMEY
United States Magistrate Judge

Copies to: The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record

Any *Pro se* Parties