**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

FEDERAL TRADE COMMISSION and
FLORIDA OFFICE OF ATTORNEY
GENERAL, DEPARTMENT OF LEGAL
AFFAIRS,

                Plaintiffs,

vs.                                   Case No.  3:10-cv-266-J-34JRK

ALCOHOLISM CURE CORPORATION, also
doing business as Alcoholism Cure
Foundation, and ROBERT DOUGLAS
KROTZER, individually and as an officer
and/or director of Alcoholism Cure
Corporation,

                Defendants.

_____/

## <u>ORDER OF CIVIL CONTEMPT</u>

This case is before the Court following an October 15, 2014 hearing at which

Defendant Robert Douglas Krotzer was directed to appear and show cause why he should

not be held in civil contempt for violating the Court's Final Judgment and Order for

Permanent Injunctive and Other Equitable Relief Against Defendants Alcoholism Cure

Corporation and Robert Douglas Krotzer (Doc. 173; Final Judgment), entered July 3, 2012.

(Doc. 192; Order to Show Cause).  The transcript of the October 15, 2014 hearing ("Show

Cause Hearing") is incorporated in this Order. <u>See</u> Show Cause Hearing Transcript (Doc.

205; Tr.).

## I.     Background

On March 29, 2010, the Federal Trade Commission ("FTC") and the State of Florida (together, "Plaintiffs") filed a Complaint for Permanent Injunction and Other Equitable Relief (Doc. 1; Complaint) against Defendants Alcoholism Cure Corporation, also doing business as Alcoholism Cure Foundation ("ACF"), and Robert Douglas Krotzer, pursuant to Section 13(b) of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 53(b), and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201, et seq. In the Complaint, Plaintiffs alleged claims of deceptive and unfair practices and false advertisements in violation of Sections 5(a) and 12 of the FTCA, 15 U.S.C. §§ 45(a) and 52, and Section 501.204 of the FDUTPA, Fla. Stat. § 501.204.  As relief, Plaintiffs sought preliminary and permanent injunctions as well as monetary consumer redress for unfair and deceptive acts and practices by Defendants in connection with Defendants' representations regarding the Permanent Cure Program, which Defendants represented provided a "cure" for alcoholism.  See generally Complaint.  The Court granted Plaintiffs' Unopposed Motion for Entry of a Stipulated Order for Preliminary Injunction (Doc. 10) on May 26, 2010 (Doc. 12).  On September 16, 2011, the Court granted Plaintiffs' Motion for Summary Judgment against Defendant Krotzer as to all counts of the Complaint (Doc. 159) and on July 3, 2012, entered an Order Granting Judgment of Default Against Defendant Alcoholism Cure Corporation (Doc. 171).

The Court entered a Final Judgment on July 3, 2012, in which it determined that a reasonable approximation of consumer injury resulting from Defendants' violations of the FTCA and FDUTPA is $732,480.00.  Final Judgment ¶ 11.  Therefore, the Court ordered that

Defendants pay $732,480.00 "as equitable monetary relief" to be paid to Plaintiffs within five days of entry of the Final Judgment. Id. § V.A. Additionally, the Court ordered Defendants to provide Plaintiffs with a customer list from the Permanent Cure Program. Id. § VII.A. Specifically, the Court ordered that

> A.    Defendants shall, no later than twenty (20) days after the date of entry of this Order, compile and deliver to Plaintiffs a report, in the form of a sworn affidavit, listing all persons who registered for or purchased the Permanent Cure Program, on or after January 1, 2005, through the date of entry of this Order. Such report shall include each person's name and address, the program(s) purchased (i.e., Heavy Drinker or Very Heavy Drinker), the total amount of moneys paid less any amount credited for returns or refunds, and, if available, the person's telephone number and email address.

Id. The Court also ordered that

> B.    Within thirty (30) days after the date of entry of this Order, Defendants shall send by first class mail, postage prepaid, an exact copy of the notice shown in Attachment A[1] to this Order to each person listed in the report required by Subsection A of this Section. The notice shall not include any other documents.

Id. § VII.B.   The Court further ordered Defendants to provide compliance reporting. Specifically, the Court ordered that

> A.    For a period of five (5) years from the date of entry of this Order,
>
> > 1.    Defendant Krotzer shall notify Plaintiffs of the following:
> >
> > > a.    Any changes in his residence, mailing addresses, and telephone numbers, within ten (10) days of the date of such change;

---

[1] Attachment A to the Final Judgment informs ACF consumers that the Court has ruled against Defendants in Plaintiffs' lawsuit based on deceptive and unfair business practices. See Final Judgment at 23. Attachment A also informs consumers that Defendants are prohibited from collecting money related to any purported contracts or agreements. Id. Attachment A further relays information to consumers related to the prevention and treatment of alcoholism. Id.

      b.     Any changes in his employment status (including self-employment), and any change in his ownership in any business entity, within ten (10) days of the date of such change. Such notice shall include the name and address of each business that he is affiliated with, employed by, creates or forms, or performs services for; a detailed description of the nature of the business; and a detailed description of his duties and responsibilities in connection with the business or employment; and

      c.     Any changes in his name or use of any aliases or fictitious names;

2.     Defendants shall notify Plaintiffs of any changes in the structure of Defendant ACF or any business entity that any Defendant directly or indirectly controls, or has an ownership interest in, that may affect compliance obligations arising under this Order, including, but not limited to: incorporation or other organization; a dissolution, assignment, sale, merger, or other action; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; or a change in the business name or address, at least thirty (30) days prior to such change, *provided* that, with respect to any proposed change in the business entity about which a Defendant learns less than thirty (30) days prior to the date such action is to take place, such Defendant shall notify Plaintiffs as soon as is practicable after obtaining such knowledge.

B.     Sixty (60) days after the date of entry of this Order and annually thereafter for a period of five (5) years, Defendants each shall provide a written report to Plaintiffs, which is true and accurate and sworn under penalty of perjury, setting forth in detail the manner and form in which they have complied and are complying with this Order. This report shall include, but not be limited to:

1.     For Defendant Krotzer:

      a.     His then-current address, mailing addresses, and telephone numbers;

      b.     His then current employment status (including self-employment), including the name, addresses, and telephone numbers of each business or entity that he is affiliated with, employed by, or performs services for, with

or without compensation; a detailed description of the nature of the business or activity; and a detailed description of his duties and responsibilities in connection with the business, employment, or activity;

      c.    Any other changes required to be reported under Subsection A of this Section.

    2.    For all Defendants:

      a.    A copy of each acknowledgment of receipt of this Order obtained pursuant to the Section title "Distribution of Order"; and

      b.    Any other changes required to be reported under Subsection A of this Section.

  C.    For purposes of this Section, "employment" includes the performance of services as an employee, consultant, or independent contractor, and "employers" include any individual or entity for whom Defendant Krotzer performs services as an employee, consultant, or independent contractor.

Id. § X.  Last, the Court ordered the Clerk of Court to close the file but retained jurisdiction over this matter "for purposes of construction, modification, and enforcement" of the Final Judgment. Id. § XIII.

On March 19, 2014, Plaintiffs filed the Motion for Order to Show Cause Why Defendant Robert Douglas Krotzer Should Not Be Held in Contempt (Doc. 182; Motion).  In the Motion, Plaintiffs asked that the Court enter an order directing Krotzer to show cause why he should not be held in civil contempt for failing to comply with Parts V, VII, and X of the Final Judgment.  Motion at 1-2.  On May 21, 2014, Krotzer filed Defendant Robert Douglas Krotzer's Amended Response to Motion for Order to Show Cause Why Defendant Robert Douglas Krotzer Should Not Be Held in Contempt (Doc. 189; Response).  Upon review of the Response, on September 22, 2014, the Court granted Plaintiffs' Motion (Doc. 192; Order

to Show Cause), finding that the evidence submitted by Plaintiffs established a <u>prima facie</u> case of civil contempt and that Krotzer had not refuted this evidence.  Order to Show Cause at 5.  The Court scheduled a Show Cause Hearing for October 15, 2014, at which Krotzer was ordered to show cause why he should not be held in civil contempt for failure to comply with the requirements of the Court's Final Judgment.  Order to Show Cause at 5-6.  Krotzer, along with his attorney, appeared at the Show Cause Hearing.  <u>See</u> Clerk's Minutes (Doc. 199).  On December 15, 2014, Plaintiffs filed Plaintiffs' Brief and Proposed Findings of Fact and Conclusions of Law in Support of Finding Defendant Robert Douglas Krotzer in Civil Contempt (Doc. 211; Plaintiffs' Brief).  Krotzer filed Defendant's Argument and Proposed Findings of Fact and Conclusions of Law in Support of Not Finding Defendant Robert Douglas Krotzer in Civil Contempt (Doc. 212; Defendant's Brief) on January 14, 2015.  Accordingly the matter is ripe for review.

## II.    Findings of Fact

The undersigned makes the following findings of fact, which were proven by clear and convincing evidence and which establish Krotzer's contempt of court as to Parts V, VII, and X of the Final Judgment.

### A.    Part V of the Final Judgment

Krotzer received at least $732,480.00 in unjust gains from ACF consumers between 2005 and 2010.  <u>See</u> Order on Remedies at 17-19 (Doc. 172).  Additionally, Krotzer stipulated that he has failed to pay any of the $732,480.00 judgment, which the Court ordered Krotzer to pay as equitable monetary relief.  <u>See</u> Tr. at 7-8.  Krotzer has also failed to provide a complete accounting for the $732,480.00 he received in ACF proceeds.  Indeed,

the Court's review of the record reveals that the only indication of an explanation by Krotzer regarding these proceeds is in Krotzer's November 14, 2012 Affidavit ("November 2012 Affidavit"), in which he states that he "has been broke for over five years, being supported by wife and Social Security" and that his "gross income for 15 years has been $750,000 which after $300,000 in Google expenses alone, has left nearly nothing for living expenses even."  Exhibit 1 at 1.[2]  Krotzer receives approximately $1,100.00 per month in Social Security income and testified that his wife pays all his other bills.  Exhibit 2; Tr. at 59.

In his Federal Trade Commission Financial Statement of Individual Defendant dated May 15, 2014 ("May 2014 Financial Statement"), Krotzer reported $5,669.00 in total ACF receipts for 2012 and $2,160.00 in total ACF receipts from January 2013 through April 2013.  See Exhibit 3 at 3.  At the Show Cause hearing, Krotzer stipulated that he received $8,099.00 of "unsolicited" payments from ACF consumers after the Court's entry of the Final Judgment.  Tr. at 9-10.  Indeed, in his Federal Trade Commission Financial Statement of Individual Defendant dated May 15, 2014 ("May 2014 Financial Statement"), Krotzer reported $5,669.00 in total ACF receipts for 2012 and $2,160.00 in total ACF receipts for the period of January 2013 through April 2013.  See Exhibit 3 at 3.  Additionally, at the Show Cause Hearing Krotzer testified that he continued to receive approximately $500 per month in payments from at least two ACF consumers though September 2013.  Tr. at 41, 55, 136-37.  Yet, in his November 2012 Affidavit, Krotzer failed to report any of these proceeds and

---

[2] The exhibits introduced by Plaintiffs at the Show Cause Hearing are cited herein as "Exhibit" followed by the exhibit number.

instead stated that "there are no assets and no income with which to pay the monetary judgment, now, or foreseeably."  Exhibit 1 at 2.

With respect to the two ACF consumers who continued to pay Krotzer after entry of the Final Judgment, one of the two mailed his checks to Krotzer, and the other had her payments automatically debited from her checking account.  Tr. at 111-112, 136-37.  Notably, Krotzer renewed the fictitious name Alcoholism Cure Foundation with the Florida Department of State, Division of Corporations, on March 11, 2013, see Exhibit 17 at 6-7, in order to open a bank account at First Atlantic Bank (#3076)[3] wherein he could deposit the payments these consumers continued to remit, Tr. at 55, 152.  Krotzer deposited $809.88 into this account on September 5, 2013.  Id. at 90-91; Exhibit 6 at 1.  The $809.88 deposit was the total of three separate checks, each in the amount of $269.96 dating from June 2013, July 2013, and August 2013.  Tr. at 90-92; Exhibit 6 at 2.  Investigator Amy Sams with the Florida Office of Attorney General testified that a consumer who had continued to pay Krotzer was the source of these checks.  Tr. at 91.

Krotzer also maintained a Wells Fargo checking account (#2523) between at least 2011 and 2014.  Tr. at 21-24, 98; Exhibit 4; Exhibit 8.  Between June 29, 2012, and May 1, 2014, a total of at least $23,910.26, other than Social Security benefits, was deposited into this account.  Tr. at 84, 88; Exhibit 4; Exhibit 5 at 6.  Indeed, in July 2012 and August 2012 alone, $16,100.00 was deposited into this account.  Exhibit 4; Exhibit 5 at 1-2; Tr. at 23-25.[4]

---

[3] The Court will herein identify Krotzer's various bank accounts by the last four digits of the account number.

[4] Additionally, in September 2011 and November 2011, Krotzer's Wells Fargo checking account (#2523) received deposits totaling $653.00 from a TD Ameritrade account held by the Krotzer family trust

(continued...)

When asked about the source of these deposits, Krotzer testified that during July 2012 and August 2012, his "personal account was the house account" and that his wife gave him money to pay for "household bills and whatever other bills needed to be paid." Tr. at 26. However, Krotzer later undermined this explanation because he was unable to identify the source from which his wife received money during this time period. Id. at 27. Specifically, when asked where his wife got the money, Krotzer testified that he "[has] no idea" and suggested that his wife may have received the money from her mother in Brazil or from trust distributions. Id. Notably, Krotzer testified that his wife was not employed during 2012 other than selling cosmetics through Mary Kay Cosmetic Company but that in any event, she did not make anything close to $16,000.00 from selling cosmetics during this period. Id. at 26-27. Krotzer's testimony that his wife gave him money in July 2012 and August 2012 for "household bills" is further lacking in credibility because Krotzer testified that his home was in foreclosure at that time and that the Krotzer family trust had not paid the mortgage or taxes for three years when the home was sold in November 2013. Id. at 33, 64; Exhibit 13.

Krotzer also has failed to provide complete banking records as required to establish an inability to pay the sum ordered. With respect to Krotzer's Wells Fargo checking account (#2523), Krotzer did not provide a bank statement for December 2012. See Exhibit 5 at 3. Additionally, this account received deposits during July 2012, September 2012, October 2012, and November 2012 totaling $2,439.76 from a Wells Fargo business checking account (#7762). Tr. at 87-88; Exhibit 4; Exhibit 5 at 1-3. Two of these deposits from the Wells

---

[4](...continued)
for which Krotzer is the settlor. Tr. at 98-99; Exhibit 8 at 2, 6.

Fargo business checking account (#7762) were for $269.96, which Investigator Sams identified as the amount ACF consumers paid Krotzer for the Permanent Cure Program. Tr. at 87. Krotzer did not disclose to Plaintiffs the existence of the Wells Fargo business checking account (#7762) in any financial disclosures and did not provide bank statements for this account. Id. at 87-88. Additionally, Krotzer did not provide a bank statement for October 2013 for his First Atlantic Bank account (#3076). Id. at 91-92; Exhibit 6. Moreover, Krotzer had another account with First Atlantic Bank (#1986) under the name Robert D. Krotzer d/b/a multiuniversityuscourtsgrants.org for which he did not submit bank statements to Plaintiffs. Tr. at 93-94; Exhibit 7. Instead, he submitted one document, a Comma Separated Value (CSV) file, showing a deposit of $100.00 made on March 28, 2014. Tr. at 94-96; Exhibit 7.

A potential source of unreported income is Krotzer's sale of Chihuahua puppies. On September 25, 2013, Krotzer received a civil citation from the City of Jacksonville Animal Care and Protective Services for selling Chihuahua puppies without a proper health certificate. Exhibit 10A, 10B; Tr. at 20.[5] Krotzer has not disclosed to Plaintiffs any income received from the sale of puppies. Tr. at 21.

With regard to Krotzer's expenses and liabilities, Krotzer has not paid rent or any mortgage payments on any of the homes he has lived in since 2012. Tr. at 35-36. Additionally, Krotzer has failed to provide complete financial disclosures. See Exhibit 2; Exhibit 3. Indeed, Krotzer has not disclosed to Plaintiffs his household expenses or his

---

[5] Krotzer testified that "[h]e was not selling puppies without a proper health certificate" and that the puppies were his wife's business. Tr. at 20. However, Krotzer signed the civil citation which states: "Mr. Krotzer admitted to selling puppies without a proper health certificate." See Exhibit 10A.

expenses for food, clothing, and utilities, nor has Krotzer disclosed to Plaintiffs his family's total monthly expenses or his family's liabilities.  Tr. at 37-39; Exhibit 2, Exhibit 3.

### B.    Part VII of the Final Judgment

Krotzer's first attempt at complying with Part VII.A. of the Final Judgment was in March 2014 when he gave Plaintiffs a flash drive containing the first set of consumer lists. Tr. at 101-103; Exhibit 11.  The flash drive contained 11 documents, but Plaintiffs were not able to access four of the documents which required a password not provided by Krotzer. Tr. at 103.  In October 2014, Krotzer submitted to Plaintiffs another consumer list in paper format.  Id. at 106; Exhibit 12.[6]  Krotzer estimated there were 584 ACF consumers.  Exhibit 12 at 1.  In total, Krotzer has submitted to Plaintiffs information for "a little over 300" consumers and has not submitted information for "a little over a hundred" consumers.  Tr. at 8.[7]

With respect to compliance with Part VII.B., Krotzer has mailed Attachment A to at most 316 ACF consumers.  Tr. at 107; Exhibit 12 at 1.  Krotzer admitted that he had the capability to send Attachment A to some consumers in July 2012 but stated that he did not do so because he believed the FTC would not accept partial compliance.  Tr. at 41.  Krotzer also admitted that in March 2014 - less than a week after Plaintiffs notified Krotzer of their intention to file a motion for order to show cause - he sent his first mailing of 201 notices. Tr. at 39-40; Exhibit 12 at 1.  Additionally,  Krotzer testified that with respect to the ACF

[6] The consumer list Krotzer provided in paper format is in a font size so small as to be barely legible.  See Exhibit 12.

[7] Krotzer testified that he has given Plaintiffs the names and addresses of 393 consumers.  Tr. at 66; Exhibit 12 at 1.

consumers who continued to pay after entry of the Final Judgment, while these consumers were still remitting payments, he did not send those consumers the notice, did not inform them that he was "not permitted to accept payments[,]" and did not inform them that he was "prohibited from collecting on the contracts[.]"  Tr. at 44-45.  Indeed, Krotzer specifically testified that with respect to the ACF consumer who continued to pay him by check through September 2013, he waited until after that consumer's contract was over to send the notice. Id. at 149.[8]  Moreover, Krotzer testified that in e-mails to the consumers who continued to pay him after entry of the Final Judgment, he continued to tell these consumers "that they could cancel if they would prove that they were not cured[.]" Id. at 44.

Krotzer further testified that he kept ACF consumers' physical addresses on his PayPal account.  Tr. at 65.  According to Krotzer, PayPal shut down his account, and, as a result, he lost much of this information.  Id.  However, Krotzer has not provided documentation substantiating this claim regarding his PayPal account.  Additionally, in his November 2012 Affidavit, Krotzer stated that prior to entry of the Final Judgment, he "had been deleting credit card numbers and related physical addresses in conformance with the Preliminary Injunction and the expressed wishes of FTC counsel."  Exhibit 1 at 3.  However, at the Show Cause Hearing, Krotzer testified that he "never threw out a record."  Tr. at 67.

---

[8] When questioned as to whether this particular consumer's check contained the consumer's address or whether the envelope had a return address, Krotzer was evasive in his answers and ultimately stated that he "did not think of looking at the check for an address. . . . All [he] did was cash it."  Tr. at 149-51.

## C.    Part X of the Final Judgment

Krotzer has filed two compliance reports: the November 2012 Affidavit and a second report on February 8, 2014 ("February 2014 Affidavit"), neither of which were timely.  Exhibit 1; Exhibit 9; Tr. at 10-11.[9]

Part X of the Final Judgment requires Krotzer to notify Plaintiffs of any changes in or use of any aliases or fictitious names.  Final Judgment § X.A.1.c.  However, Krotzer's compliance reports did not report that on March 11, 2013 he registered the fictitious name "Alcoholism Cure Foundation".  Tr. at 53-54; Exhibit 1; Exhibit 9; Exhibit 17.  Krotzer also did not report that on March 22, 2014 he filed a fictitious name for "Multiuniversity-Uscourtsgrants".  Tr. at 53-54; Exhibit 1; Exhibit 9; Exhibit 17.

Part X also requires that Krotzer annually report his current employment status and include a description of his business affiliations.  See Final Judgment § X.B.1.b.  However, Krotzer's compliance reports did not disclose that he continued to receive payments from ACF consumers after entry of the Final Judgment.  Tr. at 77-78; Exhibit 1; Exhibit 9.  Additionally, Krotzer's compliance reports do not disclose that after entry of the Final Judgment, Krotzer solicited orders for an unpublished book, Alcohol Abusers [and Alcoholics]: 20,000,000 Americans Sentenced to Die, authored by "Dr. Rob Brandon", for

---

[9] Krotzer contends that he has "filed [three] compliance reports which were put into evidence as Exhibits 1, 2, and 9[.]"  Defendant's Brief at 6.  However, Exhibit 2 is a Federal Trade Commission Financial Statement of Individual Defendant submitted by Krotzer on March 7, 2014 - not a compliance report as ordered by Part X of the Final Judgment.  See Exhibit 2.

$12.95 on the websites www.reallyenjoyafewdrinkswithoutneedingmore.com and www.enjoy2drinkswithoutneedingmore.com.[10]  Exhibit 16 at 1, 9-10.[11]

Part X further requires that Krotzer annually report "in detail the manner and form in which [he has] complied and [is] complying with this Order."  Final Judgment § X.B. However, Krotzer did not report his violation of Part II of the Final Judgment by his use of the term "Molecule Multiplicity" on his website www.dougkrotzer.com as of August 9, 2012.  See Exhibit 16 at 3; see Tr. at 121; Exhibit 1; Exhibit 9.  Additionally, in his November 2012 Affidavit, Krotzer addressed his compliance and lack of compliance with Parts V, VI, VII, and VIII of the Final Judgment, but did not address any other portion of the Final Judgment.  See Exhibit 1.  Similarly, in his February 2014 Affidavit, Krotzer addressed his lack of compliance with the customer list requirement and addressed his "business activity" with respect to his websites www.enjoyafewdrinkswithoutneedingmore.com and www.multiuniversity-uscourtsgrants.org but did not address the manner in which he has complied with other parts of the Final Judgment.  Exhibit 9.  Plaintiffs note that Krotzer's compliance reports do not explain "his use of aliases or fictitious names such as Rob Brandon, Dr. Rob Brandon, Dr. Brandon, and Dr. Doug Brandon, or his affiliation with businesses such as 'Really Enjoy a Few,' 'Natural Health Press,' 'Doug Krotzer Associates,' and 'Guilt Free Drinking.'" Plaintiffs' Brief at 12-13.  Indeed, other than stating in his November 2012 Affidavit that he "has

---

[10] Plaintiffs captured the screenshots of these websites on August 9, 2012, and August 20, 2013, respectively.  Tr. at 122-23.

[11]  Krotzer's February 2014 Affidavit did, however, mention his websites www.enjoyafewdrinkswithoutneedingmore.com and www.multiuniversity-uscourtsgrants.org and stated that these websites have been created "to seek political action, or finance research to spread the fact FTC did not contest I cured nearly all of ~475 alcoholics, many by their own written testimonials."  Exhibit 9.

considered using the alias Rob Brandon[,]" see Exhibit 1 at 1, Krotzer's compliance reports do not address his use of these names or identities on his various websites.  See Exhibit 1; Exhibit 9.

## III.    Discussion

### A.    Standard of Review

District courts have inherent power to enforce compliance with their orders through civil contempt.  E.g. Roadway Express, Inc. v. Piper, 447 U.S. 752, 764-65 (1980); FTC v. RCA Credit Servs., LLC, No. 8:08-cv-2062-T-27MAP, 2011 WL 5924969, at *1 (M.D. Fla. Oct. 5, 2011); FTC v. Slimamerica, No. 97-CIV-06072, 2011 WL 882109, at *3 (S.D. Fla. March 9, 2011); SEC v. Solow, 682 F. Supp.2d 1312, 1324 (S.D. Fla.), aff'd 396 F. App'x 635 (11th Cir. 2010).   "A finding of civil contempt must be supported by clear and convincing evidence that 'the allegedly violated order was valid and lawful; . . . the order was clear and unambiguous; and the . . . alleged violator had the ability to comply with the order.'"  FTC v. Leshin, 618 F.3d 1221, 1232 (11th Cir. 2010) (citation omitted).  Thus, the party seeking an order of civil contempt has the burden of demonstrating by clear and convincing proof "that 1) the allegedly violated order was valid and lawful; 2) the order was clear, definite and unambiguous; and 3) the alleged violator had the ability to comply with the order.'"  McGregor v. Chierico, 206 F.3d 1378, 1383 (11th Cir. 2000) (citation omitted).  The evidence must also establish by clear and convincing evidence that the order was indeed violated.  FTC v. Garden of Life, Inc., 516 F. App'x 852, 856 (11th Cir. 2013); Ameriprise Fin. Servs., Inc. v. Lawton, No. 2:11-cv-573-FtM-29SPC, 2011 WL 6412424, at * 1 (M.D. Fla. Dec. 21, 2011); see also FTC v. Lane Labs-USA, Inc., 624 F.3d 575, 582 (3d Cir. 2010); Solow, 682

F. Supp.2d at 1325; Slimamerica, 2011 WL 882109, at *3; RCA Credit Servs., LLC, 2011 WL 5924969, at *1.  The absence of willfulness is not a defense to a charge of civil contempt. Leshin, 618 F.3d at 1232.  "[S]ubstantial, diligent, or good faith efforts are not enough; the only issue is compliance." Id.  "'[I]n a civil contempt proceeding the question is not one of intent but whether the alleged contemnors have complied with the court's order.'" Id. at 1233 (citation omitted).

### B.    Conclusions of Law

The Court finds (and there is no dispute) that clear and convincing evidence demonstrates that the Final Judgment is a valid and lawful order properly entered by the Court.  The record is clear and convincing, and Krotzer admits, that he had actual notice of the Final Judgment.  The relevant portions of the Final Judgment are clear, definite and unambiguous.  Additionally, in light of the evidence presented by Plaintiffs, the Court reaffirms its prior finding that Plaintiffs established a prima facie case of civil contempt with respect to Parts V, VII, and X of the Final Judgment.  As a result, at this stage of the proceedings, the burden is on Krotzer to "defend his failure on the grounds that he was unable to comply."  See CFTC v. Wellington Precious Metals, Inc., 950 F.2d 1525, 1529 (11th Cir. 1992) (citation omitted); see Combs v. Ryan's Coal Co., 785 F.2d 970, 984 (11th Cir. 1986) (stating that the alleged contemnor "must then come forward with evidence to show a present inability to comply that goes 'beyond a mere assertion of inability and satisf[ies] his burden of production on the point by introducing evidence in support of his claim'"); see RCA Credit Servs., LLC, 2011 WL 5924969, at *4 (stating that in "reaffirm[ing] its prior finding that the FTC established a prima facie case of civil contempt[,]" the burden

then shifted to the alleged contemnor "to produce evidence 'explaining his noncompliance at [the] show cause hearing'").  "In order to succeed on the inability defense, the alleged contemnor 'must go beyond a mere assertion of inability,' . . . and establish that he has made 'in good faith all reasonable efforts' to meet the terms of the court order he is seeking to avoid.'" Wellington Precious Metals, Inc., 950 F.2d at 1529.

> [The Eleventh Circuit] construe[s] this requirements strictly.  "Even if the efforts [the alleged contemnor] did make were 'substantial,' 'diligent' or 'in good faith,' . . . the fact that [the alleged contemnor] did not make 'all reasonable efforts' establishes that [the alleged contemnor] did not sufficiently rebut the . . . prima facie showing of contempt.  The . . . use of a 'some effort' standard for measuring the strength of [the] defense [would be] an abuse of discretion."

Combs, 785 F.2d at 984 (citations omitted).  Further, to the extent Krotzer succeeds in his inability defense, the ultimate burden shifts back to Plaintiffs to prove his ability to comply. Wellington Precious Metals, Inc., 950 F.2d at 1529; see Combs, 785 F.2d at 984 ("The party seeking the contempt citation retains the ultimate burden of proof[.]").

### 1.    Part V of the Final Judgment

The parties agree that Krotzer has failed to pay any of the $732,480.00 Final Judgment.  Tr. at 8.  Nevertheless, Krotzer contends that he lacks the ability to pay.  See Defendant's Brief at 3-5.  Specifically, Krotzer asserts that there was no testimony at the Show Cause Hearing regarding his present expenses and that the only testimony regarding his present income was that he receives $1,100.00 per month in Social Security benefits. Id. at 3.  Krotzer further asserts that the $16,100.00 sum deposited into his bank account between July 2012 and August 2012 came from his wife to pay household bills.  Id.  Krotzer also points to his May 2014 Financial Affidavit, which he argues reflects that he had several expenses, and yet his only income other than Social Security was $2,160.00 in 2013 and

$5,669.00 in 2012. Id. at 3-4. Krotzer further argues that the May 2014 Financial Affidavit reflects that he does not have any assets, and as such, he does not have the present ability to pay the monetary judgment. Id. at 4.

Plaintiffs maintain that Krotzer has failed to establish an inability to pay. Plaintiffs' Brief at 4-7. Specifically, Plaintiffs argue that Krotzer has failed to disclose what happened to the $732,480.00 in ACF proceeds with which he was unjustly enriched and that this lack of disclosure constitutes a failure to meet his burden in establishing an inability defense. Id. at 4. According to Plaintiffs, Krotzer was able to at least partially comply with the monetary judgment: Plaintiffs assert that Krotzer has had various sources of income over the past two years. Id. at 5. Plaintiffs also contend that Krotzer's suggestion that his wife supplied him with the $16,100.00 deposit is not credible. Id. Further, Plaintiffs point out that Krotzer received approximately $8,099.00 from ACF consumers post-judgment through September 2013. Id. at 6. Accordingly, Plaintiffs argue that "Defendant's failure to pay the monetary judgment, coupled with his falsified income reporting post-judgment, his failure to provide a complete accounting of the illegal ACF proceeds, and his failure to corroborate his asserted inability to pay or make any good-faith efforts at compliance whatsoever, support finding him to be in contempt for non-compliance with Part V of the Final Judgment." Id. at 7.

Krotzer's burden with regard to the monetary judgment is to show that he has done his "utmost" to comply, i.e., to pay the judgment. Piambino v. Bestline Prods., Inc., 645 F. Supp. 1210, 1214 (S.D. Fla. 1986). Additionally, "[w]hile inability to pay is a defense to civil contempt, inability to pay is not a defense if the contemnor created the inability." Solow, 682 F. Supp. 2d at 1325. It is undisputed that Krotzer has not paid any of the monetary

judgment, and while it may be the case that he presently lacks an ability to pay, Krotzer has failed to establish an inability defense with respect to Part V because he has not shown that he has made, in good faith, all reasonable efforts to comply. See id. at 1330 (stating that a "mere assertion of 'present inability' is insufficient to avoid a civil contempt finding").

In support of this finding, the Court first notes that Krotzer has failed to disclose what happened to the $732,480.00 he received from ACF consumers. Further, it appears that Krotzer has had assets with which he could have satisfied the judgment, at least partially, despite his testimony at the Show Cause Hearing that his only source of income from "outside sources" for a number of years has been Social Security and his wife's support. Tr. at 14. Indeed, Krotzer gave no explanation whatsoever as to why the $8,099.00 in payments he received from ACF customers post-judgment were not used to pay down the Final Judgment. In Combs, the Eleventh Circuit determined that the district court did not err in holding the alleged contemnors in contempt despite the contemnors' claim of present inability to pay:

> Nor was there error in the district court's determination that appellants failed to meet their burden of production. The financial records they submitted were seriously inadequate. The income statements were unverified and based on the representations of [the alleged contemnor], rather than on independent audits. Asset valuations were found to be significantly understated. Financial records were generally incomplete and did not include current statements or tax returns. It may be that [the alleged contemnors] in fact lack the present ability to pay[.] . . . But their failure to make all reasonable efforts to demonstrate that fact for the court means they were properly held in contempt.

Combs, 785 F.2d at 984. Similarly, Krotzer has neither made any payments, nor has he fully disclosed his assets, expenses, and liabilities, and has not fully disclosed his banking records. As noted by the court in Combs, it may be that Krotzer lacks the present inability

to pay the monetary judgment.  However, on this record, Krotzer has failed to prevail on his defense of present inability to pay.  See United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988) (evasive and incomplete testimony will not satisfy burden of production). Accordingly, a finding of civil contempt against Krotzer with respect to Part V is warranted.

### 2.    Part VII of the Final Judgment

With respect to Part VII of the Final Judgment, there is no dispute that Krotzer has failed to produce a complete consumer list and that he has failed to send Attachment A to all ACF consumers.  Tr. at 8, 107; Exhibit 12 at 1.  Once again, Krotzer defends this charge on the basis of inability to comply.  Defendant's Brief at 9.[12]  As such, the burden rests with Krotzer "to produce detailed evidence specifically explaining why he cannot comply." Roberts, 858 F.2d at 701.  Krotzer's assertion with respect to Part VII.A. that "Plaintiffs have not shown that there are any customers that Defendant could have provided information for but did not[,]" Defendant's Brief at 9, is therefore erroneous because it is Krotzer's burden to demonstrate that he has made all reasonable efforts to comply.  Moreover, "[t]he showing required by the rigorous 'all reasonable efforts to comply' standard is a substantial one." Roberts, 858 F.2d at 702.  For example, in Roberts, the court held that the alleged contemnor had failed to rebut the IRS's prima facie showing of contempt where "[t]he evidence established that Roberts' efforts at compliance at best [could] be characterized as half-hearted."  Id.  In the same way, the record here reflects that Krotzer has not made, in good faith, all reasonable efforts to comply with Part VII of the Final Judgment.  Four of the

---

[12] With respect to Part VII.B. of the Final Judgment, Krotzer further asserts that the issue of his compliance is moot because he has "mailed [n]otices to all of the [c]ustomers that he was able to obtain addresses for[.]" Defendant's Brief at 9.  The Court fails to see how this assertion differs from a claimed inability defense.

11 documents Krotzer submitted to Plaintiffs in March 2014 on a flash drive were inaccessible due Krotzer's failure to provide the correct password.  Krotzer also testified that PayPal shut down his account, and as a result, he lost much of the consumer information. Yet Krotzer has failed to produce any evidence to substantiate this assertion.  Further, Krotzer has undermined his credibility with respect to his efforts at compliance with Part VII by stating in his November 2012 Affidavit that prior to entry of the Final Judgment, he "had been deleting credit card numbers and related physical addresses in conformance with the Preliminary Injunction and the expressed wishes of FTC counsel", Exhibit 1 at 3, then testifying at the Show Cause Hearing that he "never threw out a record."  Tr. at 67. Additionally, Krotzer's testimony that he did not notify consumers with whom he was in contact by virtue of his continued receipt of checks from them reflects a willful decision not to comply, not an inability to do so.  In light of the foregoing, a finding of civil contempt against Krotzer with respect to Part VII is warranted.

### 3.    Part X of the Final Judgment

The parties do not dispute that Krotzer's compliance reports were untimely.  Tr. at 10-11. However, Krotzer asserts that because his November 2012 Affidavit and February 2014 Affidavit "substantially comply" with the Final Judgment, the issue of his contempt with respect to Part X is now moot.  Defendant's Brief at 9.  Plaintiffs contend that these affidavits do not, in fact, comply with the requirements of Part X.  Plaintiffs' Brief at 11-13.  Thus, because Krotzer does not raise an inability defense with respect to Part X, the only issue before the Court is compliance.  To that end, the Court finds that Krotzer's affidavits do not "substantially comply" with Part X of the Final Judgment.  Plaintiffs have demonstrated that

after the Court's entry of the Final Judgment, Krotzer has engaged in activity which he should have - but failed to - report under Part X.A. of the Final Judgment. Further, Krotzer's affidavits failed to include information required by Part X.B. of the Final Judgment.

In Defendant's Brief, Krotzer takes issue with Plaintiffs' assertion that he does not "address in detail" the steps taken to comply with the Final Judgment and argues that "the Final Judgment does not set forth what detail [Krotzer] must provide to be in compliance." Defendant's Brief at 7. Yet, bewilderingly, Krotzer also asserts that "[t]he compliance reports served by Defendant, ROBERT DOUGLAS KROTZER, provide all the information the Final Judgment specifically directed the Defendant to provide." Id. Part X plainly directs Krotzer to address his compliance with each part of the Final Judgment. See Final Judgment § X.B. ("Defendants each shall provide a written report to Plaintiffs . . . setting forth in detail the manner and form in which they have complied and are complying with this Order."). Krotzer also asserts that the Final Judgment does not direct him to address compliance with the Trade Name Excision requirement, the marketing of his book, and information about his businesses or entities. Defendant's Brief at 7. However, the Final Judgment plainly directs that Krotzer's compliance reports "shall notify Plaintiffs of" changes in his address, mailing address, telephone number, employment status, ownership of any business, use of aliases or fictitious names, and the structure of ACF or any entity owned or controlled by any Defendant. See Final Judgment § X.A. As such, under Part X, Krotzer should have reported information regarding his businesses and entities. Additionally, Part I of the Final Judgment enjoined Krotzer from

> [l]abeling, advertising, promoting, offering for sale, selling or distribution any
> Covered Product or Covered Service to treat or cure alcohol or drug

dependence, or other human health-related problems, including, but not limited to, alcoholism, drug addiction, [and] alcohol abuse[.]

Final Judgment § I.  And Part II of the Final Judgment directed Krotzer to cease his use of the trade name or trademark "Molecule Multiplicty."  Final Judgment § II.  Thus, because Krotzer's marketing of his book and his use of the term "Molecule Multiplicity" violated Parts I and II of the Final Judgment, respectively, he thereby also violated Part X.B.  In light of the foregoing, a finding of civil contempt against Krotzer with respect to Part X is warranted.

## IV.    Remedies

"District courts are afforded wide discretion in fashioning an equitable remedy for civil contempt." McGregor, 206 F.3d at 1385 n.5 (citing United States v. City of Miami, 195 F.3d 1292, 1298 (11th Cir. 1999)).  "The sanctions may serve to either (1) coerce the contemnor to comply with a court order, or (2) compensate a party for losses suffered as a result of the contemnor's act." Id.  "In fashioning a remedy or sanction for civil contempt, a court has broad discretion, 'measured solely by the requirements of full remedial relief.'" RCA Credit Servs., LLC, 2011 WL 5924969, at *5 (quoting City of Miami, 195 F.3d at 1298).  "For example, a court may impose a coercive daily fine, a compensatory fine, attorney's fees and expenses, and coercive incarceration." Id. (citations omitted).

> Where the purpose of contempt is to secure compliance, the sanction is within the district court's discretion.  The district court is to consider "the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." . . . Before imposing either type of sanction, the court should also consider the financial resources of the defendant, and the resulting burden to the defendant.

EEOC v. Guardian Pools, Inc., 828 F.2d 1507, 1515 (11th Cir. 1987) (citations omitted).

Additionally, coercive sanctions "may not be so excessive as to be punitive in nature" and

"[t]he court's discretion, . . . 'must stay within the bounds of due process.'" United States v. Saunders, No. 5:06mc3-RS, 2006 WL 2425515, at *5 (N.D. Fla. Aug. 18, 2006) (citations omitted).

Plaintiffs request that the Court enter a writ of bodily attachment to compel Krotzer's compliance with Parts V, VII, and X of the Final Judgment.  Plaintiffs' Brief at 14.  However, Plaintiffs also request that the Court suspend the issuance of this writ for thirty (30) days to allow Krotzer to either comply or provide documentation of his inability to comply.  Id.  The Eleventh Circuit has affirmed the use of incarceration as a coercive civil contempt sanction by district courts.  See SEC v. Solow, 396 F. App'x 635 (11th Cir. 2010) (affirming the district court in ordering Solow's incarceration until he purged himself of contempt); Wellington Precious Metals, Inc., 950 F.2d at 1530-1531 (affirming the district court's order denying contemnor's motion to terminate the district court's coercive contempt sanction of imprisonment where the district court found that imprisonment had not yet lost its coercive effect).   Moreover, Plaintiffs' request for a conditional order of incarceration is not unprecedented in this circuit.   See SEC v. Yun, 208 F. Supp. 2d. 1279, 1288 (M.D. Fla. 2002) (ordering that should the contemnor not pay the disgorgement portion of the judgment within 10 days of entry of the order that she be taken into custody and incarcerated until she fully complies or until the Eleventh Circuit reverses the jury's verdict); see also United States v. Prater, No. 8:02-CV-2052-T-23MSS, 2003 WL 22474806, at *2 (M.D. Fla. Sept. 23, 2003) (ordering that the contempt defendants "are subject to coercive incarceration if, and only if, the $5,000 daily fine" for noncompliance "exceeds $50,000 and further review is undertaken by the Court"); cf. Saunders, 2006 WL 2425515, at *6 (ordering immediate incarceration as

a coercive sanction for civil contempt). Indeed, "'[e]mbedded in Anglo-American law is the inherent power of the judiciary to coerce obedience to its orders by summarily holding a recalcitrant person . . . in civil contempt, and then imprisoning him until he complies.'" Yun, 208 F. Supp. 2d. at 1288 (quoting In re Grand Jury Investigation (Braun), 600 F.2d 420, 422 (3d Cir. 1979)). "Without the power to punish noncompliance with its orders, this Court's authority to issue judgments would be nothing more than 'a mere mockery.'" Id. (citation omitted). However, the Court is mindful that "when civil contempt sanctions lose their coercive effect, they become punitive and violate the contemnor's due process rights." Wellington Precious Metals, Inc., 950 F.2d at 1530.

In considering whether conditional incarceration is an appropriate sanction in this case, the Court first observes that Krotzer has made, at best, half-hearted attempts at compliance with the Court's Final Judgment. With respect to the monetary judgment, it appears that Krotzer had and may still have the ability to pay some of the judgment. Yet, despite Plaintiffs' repeated efforts to obtain complete financial information, Krotzer has failed to demonstrate his inability to pay. With respect to the consumer list and Attachment A requirements, Krotzer waited until Plaintiffs notified him of their intent to file a motion for order to show cause before he partially complied, and he has since then asserted an unsubstantiated claim that he is unable to further comply. Krotzer's compliance reports have been untimely, inadequate, and misleading. Moreover, at the Show Cause Hearing, Krotzer was argumentative, evasive, and rambling. For example, when counsel for the FTC asked Krotzer whether he paid any rent to live in the home owned by the Krotzer family trust, Krotzer twice evaded the question by asserting that he has done "huge amounts of work on

the house" before finally answering that he has "not paid in cash." Tr. at 35-36.  Krotzer also

made several statements plainly lacking in credibility.  For example, he claimed that in his

efforts to comply with the consumer notice requirement, it took him two and a half months

to figure out that he could retrieve a consumer's mailing address by scrolling to the bottom

of an e-mail chain.  <u>Id.</u> at 68-69.  Indeed, as evidenced by his comment at the Show Cause

Hearing that he has "certainly had [his] eyes open to what small sums of money occupy a

room full of people earning far more than [he] ever made[,]" <u>see id.</u> at 152-53, Krotzer simply

has not taken these contempt proceedings seriously.  As such, the Court finds that an order

of conditional incarceration is reasonable, fair, and appropriate to coerce Krotzer's

compliance with the Final Judgment.

With respect to Krotzer's compliance with Part V of the Final Judgment, the Court will

allow Krotzer to avoid incarceration if, within sixty (60) days of the Court's entry of this Order,

he remits to Plaintiffs the $8,099.00 in proceeds received by Alcoholism Cure Corporation

or ACF post-judgment,[13] and he produces comprehensive documentation, in the form of a

declaration or affidavit which is true and accurate and sworn under penalty of perjury, of: (1)

his inability to pay the monetary judgment, including all reasonable, good faith attempts

made at compliance; (2) a detailed accounting of all proceeds received by Alcoholism Cure

---

[13] Alternatively, the Court could require Krotzer to pay the $8,099.00 in proceeds received post-judgment as a compensatory contempt sanction in light of Plaintiffs' argument that because consumers paid these proceeds when they had not received Attachment A, these consumers may have "reasonably but mistakenly concluded that [Krotzer] could legally seek to collect payments from them." Plaintiffs' Brief at 10-11.  However, the Court need not rely on this basis in ordering this monetary sanction.  Rather, the Court is requiring Krotzer to pay this amount as it reflects a portion of the Judgment which the Court concludes Krotzer has and has had the ability to pay.  Additionally, although the Court is limiting the amount of Krotzer's monetary contempt sanction to the proceeds he received post-judgment, Krotzer is still under a continuing obligation to pay the full $732,480.00 monetary judgment ordered in the Final Judgment.

Corporation or ACF after the entry of Judgment; (3) any assets that he transferred to his wife, the Krotzer family trust, or any other entity after the year 2005; (4) all of his current income, assets, and liabilities, including all bank and other accounts which he has thus far failed to disclose; (5) his personal and household expenses to the extent he asserts that he cannot pay the judgment because of these expenses; and (6) information reflecting the structure of and rights in the Krotzer family trust, including which persons are presently the trustee and beneficiary or beneficiaries and what property is subject to the trust.[14]

With respect to Krotzer's compliance with Part VII of the Final Judgment, the Court will allow Krotzer to avoid incarceration if, within sixty (60) days of the Court's entry of this Order, he prepares and produces the customer list as required by Part VII.A. of the Final Judgment and completes the distribution of Attachment A as required by Part VII.B. of the Final Judgment.  Alternatively, if Krotzer claims an inability to comply with Part VII of the Final Judgment, the Court will allow Krotzer to avoid incarceration if, within sixty (60) days of the Court's entry of this Order, he: (1) produces comprehensive documentation, in the form of a declaration or affidavit which is true and accurate and sworn under penalty of perjury, of his inability to comply, including but not limited to proof of reasonable, good faith attempts made at compliance and documentation of his claim that he lost consumer information when PayPal shut down his account; and (2) surrenders to Plaintiffs, for a reasonable period of time, all electronic hardware used to communicate with ACF consumers or used to store ACF records to allow Plaintiffs to conduct a forensic analysis and extract all

---

[14] In Defendant's Brief, with respect to Part V, Krotzer requests that he "be ordered to submit for deposition and at that time produce any financial documents that are requested by Plaintiffs to the extent they exist."  Defendant's Brief at 8.  However, in light of the foregoing, the Court finds that such a sanction would not be adequately coercive.

consumer information.   If Plaintiffs are able to recover ACF consumer information from Krotzer's electronic hardware, the Court will permit Plaintiffs to send Attachment A to consumers by first-class mail if possible, or otherwise by e-mail.

With respect to Part X of the Final Judgment, the Court will allow Krotzer to avoid incarceration if, within sixty (60) days of the Court's entry of this Order, he prepares and produces a compliance report which satisfies Part X of the Final Judgment and also includes: (1) descriptions of his compliance with each part of the Final Judgment; (2) his use of any terms covered by Part II of the Final Judgment; (3) his use of any fictitious names and aliases, and his activities in connection with all businesses or entities that he is affiliated with or has created since entry of the Final Judgment; and (4) to the extent he must report a lack of compliance, comprehensive documentation of his inability to comply, including proof of all reasonable, good faith attempts made at compliance.

Plaintiffs also request that the Court enjoin Krotzer from accepting funds from ACF consumers.  Plaintiffs' Brief at 16.  Additionally, Plaintiffs ask that within forty-five (45) days of entry of the contempt order and once Krotzer has complied with the requirements set forth in the contempt order, the Court order Krotzer to file a "truthful and complete affidavit with the Court confirming his compliance with the Court's order."  Id.  The Court finds each of these sanctions fair and reasonable in light of the current record.  Accordingly, the Court will enjoin Krotzer from accepting payments in any form from ACF consumers.  Additionally, the Court will order that seventy-five (75) days after the Court's entry of this Order, Krotzer shall file with the Court a declaration or affidavit which is true and accurate and sworn under

penalty of perjury, confirming and setting forth in detail the manner and form in which he has complied with this Order.

Accordingly, it is hereby

**ORDERED**:

1.     Contempt Defendant Robert Douglas Krotzer is found to be in civil contempt for violating the Court's Final Judgment and Order for Permanent Injunctive and Other Equitable Relief Against Defendants Alcoholism Cure Corporation and Robert Douglas Krotzer (Doc. 173).

2.     Within sixty (60) days of the date of this Order, Krotzer shall:

     A.     Remit to Plaintiffs the $8,099.00 in proceeds received by Alcoholism Cure Corporation or ACF post-judgment, in accordance with the terms set forth in Part V of the Final Judgment;

     B.     Produce comprehensive documentation, in the form of a declaration or affidavit which is true and accurate and sworn under penalty of perjury, of:

          i.     his inability to pay the monetary judgment, including all reasonable, good faith attempts made at compliance;

          ii.     a detailed accounting of all proceeds received by Alcoholism Cure Corporation or ACF after the entry of Judgment;

          iii.     any assets that he transferred to his wife, the Krotzer family trust, or any other entity after the year 2005;

iv.     all of his current income, assets, and liabilities, including all bank and other accounts which he has thus far failed to disclose;

v.      his personal and household expenses to the extent he asserts that he cannot pay the judgment because of these expenses; and

vi.     information reflecting the structure of and rights in the Krotzer family trust, including which persons are presently the trustee and beneficiary or beneficiaries and what property is subject to the trust;

C.     Prepare and produce the customer list as required by Part VII.A. of the Final Judgment and distribute Attachment A as required by Part VII.B. of the Final Judgment. Provided, however, if Krotzer claims an inability to comply with Part VII of the Final Judgment, he shall

i.      produce comprehensive documentation, in the form of a declaration or affidavit which is true and accurate and sworn under penalty of perjury, of his inability to comply, including but not limited to proof of reasonable, good faith attempts made at compliance and documentation of his claim that he lost consumer information when PayPal shut down his account; and

ii.     surrender to Plaintiffs, for a reasonable period of time, all electronic hardware used to communicate with ACF consumers

or used to store ACF records to allow Plaintiffs to conduct a forensic analysis and extract all consumer information;

D. Prepare and produce a compliance report which satisfies Part X of the Final Judgment and also includes:

    i. descriptions of his compliance with each part of the Final Judgment;

    ii. his use of any terms covered by Part II of the Final Judgment;

    iii. his use of any fictitious names and aliases, and his activities in connection with all businesses or entities that he is affiliated with or has created since entry of the Final Judgment; and

    iv. to the extent he must report his lack of compliance, comprehensive documentation of his inability to comply, including proof of all reasonable, good faith attempts made at compliance; and

3. Provided, if Krotzer fails to comply with Paragraph 2 of this Order within sixty (60) days of the date of this Order, he shall be remanded to the custody of the U.S. Marshals and incarcerated until such time as he purges his contempt with compliance as set forth above.

4. To the extent Plaintiffs are able to recover consumer information from Krotzer's electronic hardware, Plaintiffs are permitted to send the notice attached as Attachment A to the Final Judgment to the consumers by first-class mail if possible, or otherwise by e-mail.

5.     Krotzer is hereby enjoined from accepting payments in any form from ACF consumers.

6.     For purposes of this Order, Krotzer shall, unless otherwise directed by Plaintiffs' authorized representatives, send by overnight courier all reports and notifications required by this Order to Plaintiffs at the following addresses:

> Laura Boeckman, Esq.
> Florida Office of the Attorney General
> 1300 Riverplace Blvd., Suite 405
> Jacksonville, Florida 32207
> Re:  <u>FTC, et. al. v. Alcoholism Cure Corporation, et al.</u>
> Civil Action No. 3:10-cv-266-J-34JRK
>
> Robert M. Frisby, Esq.
> Federal Trade Commission
> 600 Pennsylvania Ave., N.W.
> Room CC-9528
> Washington, D.C. 20580
> Re:  <u>FTC, et. al. v. Alcoholism Cure Corporation, et al.</u>
> Civil Action No. 3:10-cv-266-J-34JRK

In lieu of overnight courier, Krotzer may send such reports or notifications by first-class mail, but only if Krotzer contemporaneously sends an electronic version of such report or notification to Plaintiffs at: Laura.Boeckman@myfloridalegal.com and rfrisby@ftc.gov.

7.    Krotzer shall, within five (5) business days of receipt of this Order, file with the Court a sworn statement acknowledging his receipt of this Order.

**DONE AND ORDERED** in Jacksonville, Florida, this 6th day of October, 2015.

MARCIA MORALES HOWARD
United States District Judge

lc18

Copies to:

Counsel of Record

Pro se parties

-33-